UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Sturm, Ruger & Co., Inc.,
     Plaintiff

     v.                            Case No. 14-cv-194-SM
                                   Opinion No. 2015 DNH 148
Armscor Precision International, Inc.,
Rock Island Armory Exports, Inc., and
Arms Corporation of the Philippines,
     Defendants

**O R D E R**

Sturm, Ruger & Co., Inc. ("Ruger") brought suit against Armscor Precision International, Inc. ("API"), Rock Island Armory Exports, Inc. ("RIA") (collectively "domestic defendants"), and Arms Corporation of the Philippines ("ACP" or "Philippines defendant"), (collectively "defendants") for alleged trade dress infringement and dilution, and for allegedly violating New Hampshire's Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. 358-A:2. Ruger asserts that by manufacturing, marketing, and selling a copycat of one of its firearms, the 10/22 (alleged to be one of the most popular .22 caliber semi-automatics on the market for over 50 years), defendants misappropriated and diluted plaintiff's trade dress and confused Ruger's customers, causing them to purchase defendants' rifles. Defendants move to dismiss the entire action for lack of personal jurisdiction or, in the alternative, to transfer venue to the District of Nevada.

Defendants also move to dismiss plaintiff's CPA claim.  Plaintiff
objects.  As explained below, plaintiff has made a sufficient
prima facie showing of personal jurisdiction over defendants, and
defendants have not shown that venue is improper in this
district, or that transfer is nonetheless appropriate.
Consequently, defendants' motion to dismiss and motion to
transfer venue are denied.


## The Legal Standard

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil
Procedure, when considering a motion to dismiss for lack of
personal jurisdiction, the court takes the facts pled in the
complaint as true, and construes them "in the light most
congenial to the plaintiff's jurisdictional claim."  Negrón-
Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir.
2007); see Fed. R. Civ P. 12(b)(2), (6).  In a case such as this,
where the court rules based on the "prima facie record," the
pleadings, affidavits, and other written materials, in the
absence of an evidentiary hearing, the plaintiff need only make a
"prima facie" showing that the defendants are subject to personal
jurisdiction.  See C.W. Downer & Co. v. Bioriginal Food & Science
Corp., 771 F.3d 59, 65 (1st Cir. 2014); Dagesse v. Plant Hotel
N.V., 113 F. Supp. 2d 211, 214-15 (D.N.H. 2000); Presby Patent
Trust v. Infiltrator Sys., Inc., No. 14-cv-542, 2015 WL 3506517,

at *2 (D.N.H. June 3, 2015).  In making a prima facie showing of
jurisdiction, a plaintiff need not, and indeed may not, rely only
on the allegations in the complaint.  <u>See</u> <u>Dagesse</u>, 113 F. Supp.
2d at 215; <u>Presby Patent Trust</u>, No. 14-cv-542, 2015 WL 3506517,
at *2.  "Rather, he or she must adduce evidence of specific facts
that support jurisdiction." <u>Dagesse</u>, 113 F. Supp. 2d at 215.  To
proffer these facts, a plaintiff may rely on "documents attached
to an opposition, even if they contain hearsay, so long as that
evidence 'bears circumstantial indicia of reliability.'" <u>Presby</u>
<u>Patent Trust</u>, No. 14-cv-542, 2015 WL 3506517, at *8 n.2.  The
court then takes the facts as pleaded and the "evidentiary
proffers as true and construe them in the light most favorable to
the plaintiff's claim . . . ." <u>C.W. Downer & Co.</u>, 771 F.3d at
65.

     The court also considers <u>uncontradicted</u> facts put forth by
the defendant, but does not "credit conclusory allegations or
draw farfetched inferences." <u>Negrón-Torres</u>, 478 F.3d at 23.
(citations and quotation marks omitted) (emphasis added).

                         **Background**
     The relevant facts, construed in the light most favorable to
Ruger, are as follows.  Ruger is a Delaware corporation, with
corporate headquarters in Southport, Connecticut.  The facility

                              3

at which it manufactures the 10/22 rifle is located in Newport,
New Hampshire.  Ruger manufactures all its 10/22 rifles at the
New Hampshire plant, where it also keeps its plans, drawings, and
equipment related to the 10/22.  Pertinent Bureau of Alcohol,
Tobacco, and Firearms regulations require each rifle to be marked
with its manufacturing origin.  Ruger conspicuously marks each
10/22 rifle barrel with the following embossment, "RUGER,
NEWPORT, NH USA."  Ruger has been manufacturing the 10/22 in
Newport since 1964.

Domestic defendants, API and RIA are Nevada corporations
with principal places of business in Nevada.  Defendant Arms
Corporation of the Philippines is incorporated in the
Philippines, with a principle place of business in Manila.  Arms
Corporation of the Philippines is the parent company of API and
RIA, its United States subsidiaries.  Defendants are not
registered to do business in New Hampshire; do not hold any
licenses to do business in New Hampshire; do not have a
registered agent in New Hampshire; do not maintain a mailing
address, real property, offices, facilities, employees, or bank
accounts in New Hampshire; have never paid New Hampshire taxes;
and do not manufacture or source products in New Hampshire.

However, dating back to at least November of 2013, defendants have been marketing, distributing, and selling a virtually identical copy of the Ruger 10/22 in New Hampshire, under the trade names Armscor Rock Island Armory M22, Rock Island Armory M22, and Rock Island Armory RIA22.  As required by law, these rifles are embossed with "ACP PHILIPPINES" to identify the manufacturer and "APINTL—PAHRUMP NV" to identify the importer.  Those stamps connect the domestic and Philippines defendants to the allegedly infringing rifles that are being marketed and sold in New Hampshire by at least one agent of defendants.[1]  Regarding the allegations of trade dress infringement specifically, at least one trade publication, citing an Armscor staffer as its source, recognized that the M22/RIA22 "is an exact copy of the 10/22 . . . ."

Further, according to the president of Southern Ohio Gun Distributors ("SOG"), one of defendants' wholesale distributors, acting as an agent for defendants' marketing and sales in the

---

[1]     In addition, plaintiff has proffered evidence that Martin Tuason, whose family started ACP in 1905, is the CEO of all three defendants, and speaks of all three entities as a single unit, "the Armscor group of companies."  Tuason confirmed in an April 2014 interview that API and RIA, the domestic defendants, are simply an extension of ACP in the United States.  In the same interview, Tuason conceded that he lives in Las Vegas and works "from home" in Pahrump, NV, on a Philippine time schedule.  For purposes of this motion, the court accepts those facts as true and will treat defendants as a single corporate entity.

United States and in New Hampshire in particular,[2] asked defendants' CEO, Tuason, "how can Armscor/RIA sell a rifle that is identical to the Ruger 10/22?"  Tuason allegedly responded that Ruger's "patent ha[d] run out."  SOG then distributed a sales flyer to all FFL holders, including 1,170 in New Hampshire, one of which was Rody's Gun Shop, LLC, located half a mile from Ruger's manufacturing facility in Newport, NH.  The flyer disclosed that the RIA22 is a "well made copy of a very popular 22LR 10 shot rifle (Ruger's patent expired).  All mags and accessories that fit that model will fit this."

For their part, defendants do not deny that they solicit and sell the allegedly infringing rifles in New Hampshire via their wholesale-distributor agents.  Rather, the vice president of defendants, Stephen Anderson, represents in a sworn affidavit only that defendants "did not <u>directly</u> solicit or sell any products in New Hampshire that relate to this current suit by Ruger." (emphasis added).  In addition, defendants' domestic website identifies at least one retailer, in addition to Rody's,

---

[2]    Plaintiff has proffered evidence demonstrating that firearms manufacturers in the United States typically do not sell directly to ultimate consumers, but rather they sell to wholesale distributors with valid federal firearms licenses ("FFL"), who act as agents and market and sell the manufacturer's firearms to licensed retailers in various states.

from whom their products can be purchased in New Hampshire —
Merrimack Firearms in Merrimack, NH.

Based on the foregoing allegations, Ruger asserts claims of
trade dress infringement (Count I) and trade dress dilution
(Count II) under the Lanham Act, 15 U.S.C. §§ 1125(a), (c), and
unfair and deceptive trade practices under New Hampshire Revised
Statutes Annotated ("RSA") 358-A:2 (Count III).

## Discussion

Defendants first move to dismiss the complaint for lack of
personal jurisdiction.  Ruger counters that by manufacturing,
marketing, and selling a copycat of one of its best selling
firearms, defendants have misappropriated and diluted plaintiff's
trade dress and confused Rugers' customers, both in New Hampshire
and around the world, causing them to purchase defendants'
rifles.  As a result, Ruger claims to have suffered foreseeable
injury in New Hampshire, subjecting defendants to jurisdiction in
this state.  Alternatively, defendants move to transfer venue to
the District of Nevada.  Defendants also move to dismiss
Plaintiff's CPA claim for failure to state a claim.

7

I.    **Motion to Dismiss for Lack of Personal Jurisdiction**

A.   <u>Statutory and Constitutional Prerequisites</u>

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating "the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  <u>See Negrón-Torres</u>, 478 F.3d at 24 (quoting <u>U.S. v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir. 2001); <u>see also</u> <u>C.W. Downer & Co. v. Bioriginal Food & Science</u>, 771 F.3d 59, 65 (1st Cir. 2014).

Where, as here, the state's long-arm statute is coextensive with the constitutional limits of due process, the two inquiries become one, focusing solely on whether jurisdiction comports with due process.  <u>See</u> <u>id.</u>  "Due process requires only that in order to subject a defendant to a judgment <u>in</u> <u>personam</u>, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>Astro-Med, Inc. v. Nihon Kohden America, Inc.</u>, 591 F.3d 1, 9 (1st Cir. 2009) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 319 (1945)).  "The inquiry into 'minimum contacts' is necessarily fact-specific, 'involving an individualized assessment and factual analysis of the precise mix of contacts that characterize each case.'"  <u>Medicus Radiology, LLC v. Nortek</u>

Med. Staffing, Inc., No. 10-cv-300, 2011 WL 9373, at *2 (D.N.H.
Jan. 3, 2011) (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir.
1994)).


B.  General v. Specific Jurisdiction

Personal jurisdiction comes in two varieties: specific and
general.  See Negrón-Torres, 478 F.3d at 24.  Key to both is the
existence of "minimum contacts" between the nonresident defendant
and the forum.  Id.  "General jurisdiction exists when the
litigation is not directly founded on the defendant's forum-based
contacts, but the defendant has nevertheless engaged in
continuous and systematic activity, unrelated to the suit, in the
forum state."  United Elec. Workers v. 163 Pleasant St. Corp.,
960 F.2d 1080, 1088 (1st Cir. 1992) (citing Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 & n.9
(1984)).  Ruger does not contend that defendants engaged in
"continuous and systematic activity" in New Hampshire, nor does
it ask the court to exercise general jurisdiction over them.
Accordingly, if the court may properly exercise personal
jurisdiction over the defendants, it must be specific
jurisdiction.


A court may exercise specific jurisdiction "where the cause
of action arises directly out of, or relates to, the defendant's

forum-based contacts." United Elec. Workers, 960 F.2d at 1088-89 (citation omitted).  In an effort to assist trial courts in determining whether they may properly exercise specific jurisdiction, the court of appeals for this circuit has formulated a three-part test:

> (1) whether the claim "directly arise[s] out of, or
> relates to, the defendant's forum state activities; (2)
> whether the defendant's instate contacts represent a
> purposeful availment of the privilege of conducting
> activities in the forum state, thereby invoking the
> benefits and protections of that state's laws and
> making the defendant's involuntary presence before the
> state's courts foreseeable; and (3) whether the
> exercise of jurisdiction is reasonable.

C.W. Downer & Co., 771 F.3d at 65.  An affirmative finding as to each of those three elements — relatedness, purposeful availment, and reasonableness — is necessary to support the court's exercise of personal jurisdiction over a defendant.  See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).


    1.   Relatedness

The "relatedness prong requires a plaintiff to show a 'demonstrable nexus between [its] claims and the [defendant's] forum-based activities, such . . . [that] the litigation itself is founded directly on those activities.'"  C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 66 (1st Cir. 2014)

10

(citation omitted) (alterations in original).  The court
explained in Downer that "this test is a flexible, relaxed
standard."  Id. (quotation marks and citation omitted); Astro-
Med, Inc., 591 F.3d at 9.


     The relatedness requirement is tied to the particular claims
asserted.  Phillips Exeter Acad., 196 F.3d at 289 (citing United
Elec. Workers, 960 F.2d at 1089.  All three of Ruger's counts
sound in trademark infringement or unfair competition.  Trademark
infringement claims and unfair competition claims are analyzed as
tort claims.  PFIP v. Planet Fitness Enters., Inc., No. Civ. 04-
250, 2004 WL 2538489, at *5 (D.N.H. Nov. 10, 2004) (citing Hard
Rock Café Licensing Corp. v. Concession Servs., Inc., 955 F.2d
1143, 1150 (7th Cir. 1992)).  "When the plaintiff's claims sound
in tort, a court 'must probe the causal nexus between the
defendant's contacts and the plaintiff's cause of action.'"
Medicus Radiology, LLC, No. 10-cv-300, 2011 WL 99373, at *3
(D.N.H. Jan. 3, 2011) (quoting Phillips Exeter Acad., 196 F.3d at
289).  That analysis is conducted "with reference to the contacts
the defendant creates with the forum state, though those contacts
may be 'intertwined' with the activities of the plaintiff."  C.W.
Downer & Co., 771 F.3d at 66 (quoting Walden v. Fiore, 134 S. Ct.
1115, 1122-23 (2014)).

When, as here, the torts alleged are, at least in part,
intentional torts, "[c]onsistent with <u>Calder v. Jones</u>, 465 U.S.
783, 789 (1984), a defendant 'need not be physically present in
the forum state to cause injury (and thus 'activity' for
jurisdictional purposes) in the forum state.'"  <u>Astro-Med, Inc.</u>,
591 F.3d at 10 (quoting <u>Northern Laminate Sales, Inc. v. Davis</u>,
403 F.3d 14, 25 (1st Cir. 2005)); <u>see</u> <u>Edvisors Network, Inc., v.
Educational Advisors, Inc.</u>, 755 F. Supp. 2d 272, 283 (D. Mass.
2010).  Citing <u>Calder</u>, the Supreme Court explained in <u>Walden</u> that
a "forum State's exercise of jurisdiction over an out-of-state
intentional tortfeasor must be based on intentional conduct by
the defendant that creates the necessary contacts with the
forum," one of which can be the "effects" of the defendant's
alleged intentionally tortious conduct aimed at the forum state.
<u>See</u> <u>Walden</u>, 134 S. Ct. at 1123-24.

In this case, plaintiff's claims are trade dress
infringement and dilution under 15 U.S.C. § 1125(a), (c), and
unfair and deceptive trade practices under RSA 358-A:2.  To prove
its trade dress claims, plaintiff must demonstrate, among other
elements, that the trade dress is inherently distinctive, has
acquired distinctiveness through secondary meaning, or, for
dilution, is famous, and that prospective purchasers of the
products are likely to be confused about the source of the

12

products.   See Yankee Candle Co. v. Bridgewater Candle Co., 259
F.3d 25, 38 (1st Cir. 2001).   A plaintiff can prove a design has
acquired secondary meaning or has been diluted in part by
showing, as Ruger alleges here, that the defendant copied the
plaintiff's design intentionally.   Plaintiff can prove its state
law unfair competition claim by showing, among other acts, that
defendants passed off goods as those of Ruger, or by causing a
likelihood of confusion or misunderstanding as to the source,
sponsorship, approval, or certification of the goods.

Plaintiff contends that defendants' contacts with New
Hampshire that give rise to its trade dress and unfair
competition claims include intentionally copying the trade dress
of its 10/22; sending advertising flyers through a wholesale
distributing agent to 1,170 FFL holders in New Hampshire,
including Rody's Gun Shop;[3] providing on their website the name
and location of a licensed retailer where the infringing rifles
are offered for sale in New Hampshire; and causing the infringing
products to be sold in and delivered to New Hampshire.

---

[3]   It is well established that forum-related contacts made by
an agent acting within the scope of its authority are
attributable to the principal.   See Dagesse v. Plant Hotel N.V.,
113 F Supp. 2d 211, 216 n.2 (D.N.H. 2000) (citing Noonan v.
Winston Co., 135 F.3d 85, 90 n.3 (1st Cir. 1998)).

Because, plaintiff argues, its claims for infringement,
dilution, and consumer confusion arise directly out of
defendants' contacts with New Hampshire, the contacts are related
to plaintiff's claims.  In support of its argument, plaintiff
points to <u>Astro-Med</u>.  There, the defendant approached an employee
of the plaintiff outside the forum state to entice him to leave
the plaintiff and work for the defendant, knowing that the
employee had entered into a contract in the forum state with the
plaintiff, that the contract contained a choice of law provision
favoring the forum state, that the employee submitted to
jurisdiction in the forum state by virtue of the contract, and
that the contract contained a non-compete covenant because the
defendant's tortious conduct outside the forum state "was a cause
of the breach of contract — the actual injury — that occurred in
[the forum state]."  <u>Id.</u> at 10.  Because plaintiff's "in-forum
injury was clearly related to [its] tortious interference claim"
the relatedness prong of the minimum contacts analysis was
satisfied.  <u>Id.</u>

In <u>Bose Corp. v. Neher</u>, No. 09-cv-11479, 2010 WL 3814886 (D.
Mass. July 30, 2010), the court found the relatedness prong
satisfied and exercised specific personal jurisdiction over an
out-of-state defendant in a trademark case when the defendant
advertised the sale of an allegedly counterfeit product on the

14

internet, accessible to forum residents, and allegedly sold at
least one counterfeit item to a forum state resident via the
website.  Id. at *1, *4, *7; compare with Presby Patent Trust v.
Infiltrator Sys. Inc., No. 14-cv-542, 2015 WL 3506517, at *3
(D.N.H. June 3, 2015) (declining to exercise personal
jurisdiction over an out-of-state defendant in a patent
infringement case because the plaintiff failed to allege or
produce any evidence that the defendant "makes, sells, uses, or
offers for sale its accused [infringing product] in New
Hampshire," so that the plaintiffs claims could not arise out of
the defendant's contacts with the forum state).


    On the other hand, defendants point to this court's decision
in Neodevices, Inc. v. Newmed, Inc., No. 08-cv-375, 2009 WL
689881 (D.N.H. Mar. 12, 2009), to support its argument that
personal jurisdiction should not lie in this case.  In
NeoDevices, the plaintiff brought claims for state law trademark
dilution and defamation, among other claims, against a non-
resident defendant for using identical product serial numbers to
trick buyers into buying its products on the internet rather than
the plaintiff's, and making disparaging false statements about
the plaintiff's products.  Id. at *1-*2.  The court concluded
that the plaintiff failed to proffer any evidence that the
defendant's infringement outside the state caused injury felt

15

inside New Hampshire.  Id. at *5.  Further, the plaintiff failed
to provide any evidence, or even allegations, that the defendant
used the deceptively similar product codes in New Hampshire,
because the plaintiff failed to identify any potentially
misinformed consumers or distributors located in New Hampshire.
Id.  Similarly, the plaintiff failed to identify any New
Hampshire customers or distributors to whom the defendant related
any disparaging information about plaintiff.  Id. at *4.


     As in Astro-Med and Bose Corp., plaintiff in this case has
offered evidence that defendants' contacts with New Hampshire
include infringing conduct targeted at a New Hampshire resident,
i.e. advertising for sale and selling infringing rifles in New
Hampshire, and, acting through its agent, SOG, distributing
advertisements of its infringing products to hundreds of New
Hampshire licensed firearms retailers.  Those contacts, including
the concomitant injury to Ruger, give rise to its claims for
trade dress infringement, dilution felt in New Hampshire, and
unfair competition.  Plaintiff has satisfied the relatedness
inquiry.


               2.  Purposeful Availment
     The second prong of the specific jurisdiction test requires
the court to consider whether the defendant's contacts with the

16

forum state "'represent a purposeful availment of the privilege
of conducting activities in the forum state.'"   <u>Sawtelle v.
Farrell</u>, 70 F.3d 1381, 1389 (1st Cir. 1995) (quoting <u>United Elec.
Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d at 1089).
Specifically, the court looks to whether the defendant "engaged
in any purposeful activity related to the forum that would make
the exercise of jurisdiction fair, just, or reasonable." <u>Id.</u> at
1391.   The court of appeals has explained that the "purposeful
availment prong represents a rough quid pro quo: when a defendant
deliberately targets its behavior toward the society or economy
of a particular forum, the forum should have the power to subject
the defendant to judgment regarding that behavior." <u>C.W. Downer
& Co.</u>, 771 F.3d at 66.   "The cornerstones of [the purposeful
availment] inquiry are voluntariness and foreseeability.   This
places the emphasis on the defendant's intentions and prohibits
jurisdiction based on random, fortuitous, or attenuated
contacts." <u>Id.</u> (internal quotation marks and citations omitted).
With these basic principles in mind, the court turns to the
parties' arguments on the issue of purposeful availment.

    Plaintiff contends that under the principles set out in
<u>Calder</u> and <u>Walden</u>, defendants have purposefully availed
themselves of the privilege of conducting activities in New
Hampshire and should reasonably expect to be haled into court

17

here because they copied the trade dress of a product they knew
was manufactured in the state, advertised their allegedly
infringing products for sale in New Hampshire, offered their
allegedly infringing products for sale at licensed retailers in
New Hampshire, and knew that plaintiff would feel the effects of
that intentional conduct in New Hampshire.

The Calder "effects" test focuses on the effects of the
defendant's conduct.  Calder, 465 U.S. at 788-89.  With respect
to claims involving harm to intellectual property rights, courts
in this circuit have held that "damage to intellectual property
rights (infringement of a patent, trademark or copyright) by
definition takes place where the owner suffers the damage," and
"for purposes of constitutional inquiry, the situs of tortious
injury arising from interference with intellectual property is
the place of plaintiff's residence."  Anderson v. Century Prods.
Co., 943 F. Supp. 137, 143 (D.N.H. 1996); see Bose Corp. v.
Heher, 2010 WL 3814886, at *5 ("Even assuming that [the
defendant] never sold any allegedly counterfeit [goods] to a
[forum state] address, the purposeful availment prong is still
met if plaintiff demonstrates her alleged trademark infringement
against a [forum-state] company.").

18

The plaintiff in Calder brought a libel action in California
state court against the National Enquirer, a Florida corporation
with its principal place of business in Florida.  Two other
individual defendants, Calder and South, were Florida residents
responsible for researching and writing the allegedly defamatory
article.  South researched the article in Florida, in part via
phone calls he made to California.  The Calder court held that
jurisdiction existed over the defendants in the forum state
where:

> (i) [the defendants'] intentional actions were aimed at
> the forum State, (ii) they knew that the article was
> likely to have a devastating impact on the plaintiff,
> and (iii) they knew that the brunt of the injury would
> be felt by the plaintiff in the forum State where she
> lived, worked and the article would have the largest
> circulation.

Hugel v. McNell, 886 F.2d 1, 4 (1st Cir. 1989) (emphasis added)
(citing Calder, 465 U.S. at 789-90).  The defendants' knowledge
that the major impact of their article would be felt in the forum
state was held to constitute a purposeful contact from which the
authors could reasonably expect to be haled into the forum
state's courts to defend their actions.  Calder, 465 U.S. at 789-
90.


In this case, while the intentional conduct aimed at New
Hampshire is perhaps less dramatic than that in Calder, it

19

remains significant.  As set out above, plaintiff proffers
evidence that defendants reached in to New Hampshire and
deliberately copied plaintiff's design for its M22 and RIA22
rifles.  Plaintiff's rifle is conspicuously marked that it is
made in New Hampshire, and its instruction manual and website
indicate an address in New Hampshire as the source of replacement
parts for the Ruger 10/22, and the place where the rifles can be
repaired.  In the advertisement targeted at New Hampshire,
defendants state that they are able to so precisely mimic
plaintiff's design and features because plaintiff's patent had
expired.  That declaration suggests intentional targeting of the
New Hampshire market, as well as knowledge that defendants'
design is a copy of plaintiff's.  Defendants also promoted a New
Hampshire sales location on its website, thereby directing
consumers in New Hampshire to a store where defendants'
infringing rifles could be purchased in New Hampshire.  Thus,
defendants knew that sales of their rifles, in or outside New
Hampshire, would have an adverse economic effect on Ruger, in
terms of lost revenue from sales of the Ruger 10/22, sales,
replacement parts, and repairs, but also in injury to the Ruger
marks.

     Defendants contend that <u>Walden</u> essentially gutted the <u>Calder</u>
effects test as a basis for finding purposeful availment by

requiring that the defendant's forum-based contacts be completely
independent of its relationship with the plaintiff.  See Walden,
135 S. Ct. at 1122, 1126.  Specifically, Walden provided that the
"mere fact that [defendant's] conduct affected plaintiffs with
connections to the forum State does not suffice to authorize
jurisdiction," that the relationship between the defendant and
the forum "must arise out of contacts that the 'defendant
himself' creates with the forum," and that "the plaintiff cannot
be the only link between the defendant and the forum."  Id.

     In Walden, a Georgia police officer working as a Drug
Enforcement Administration agent at the Atlanta airport
approached the plaintiff and her companion at their departure
gate where they were about to board a flight to Las Vegas,
Nevada.  Id. at 1119.  The agent had been informed that the
plaintiffs had residences in Nevada and California.  Id.  The
agent questioned the plaintiffs about the $97,000 in cash they
were carrying and seized the cash following a positive dog sniff
for drugs.  The plaintiffs filed suit against the agents in
federal district court in Nevada for return of the money.  Id. at
1119-20.  Although the Court acknowledged that "a defendant's
contacts with the forum State may be intertwined with his
transactions or interactions with the plaintiff or other
parties," it held that Nevada could not exercise jurisdiction

21

over the Georgia defendant because the plaintiffs' "claimed
injury [did] not evince a connection between [the agent] and
Nevada." Id. at 1125.  The only connection the case had to
Nevada was that "Nevada [was] where [the plaintiffs] chose to be
at a time when they desired to use the funds seized by [the
agent]." Id.


     A plain reading of Walden reveals, however, that the Court
cited Calder for support, distinguished Walden on its facts, and
explained that "Calder made clear that mere injury to a forum
resident is not a sufficient connection to the forum . . . ."
Id.  The Walden court ultimately held that "[u]nlike the broad
publication of the forum-focused story in Calder, the effects of
[the agent's] conduct on [plaintiffs] are not connected to the
forum State in a way that makes those effects a proper basis for
jurisdiction." Id. at 1125.  Defendants' suggestion that Walden
somehow overruled Calder is not persuasive.


     Defendants next point to Advanced Tactical Ord. Sys., LLC v.
Real Action Paintball, Inc., 751 F.3d 796 (7th Cir. 2014), a
Seventh Circuit case post-Walden in which the plaintiff sued a
California company in Indiana for trade dress infringement and
other claims, as an indication that Walden rejects asserting
personal jurisdiction based on the Calder effects test for

purposeful availment. In <u>Advanced Tactical</u>, the court reversed the district court's exercise of jurisdiction over a non-resident defendant who knew that the plaintiff was an Indiana resident, could foresee harm in Indiana, and filled a limited number of orders for the allegedly infringing product in Indiana in part because to "hold otherwise would mean that a plaintiff could bring suit in literally any state where the defendant shipped at least one item." 751 F.3d at 801.

<u>Advanced Tactical</u> is of course not controlling in this circuit. Even so, based on the language of <u>Walden</u> itself, as well as our circuit's decision in <u>C.W. Downer & Co.</u>, which cites <u>Walden</u> in stressing that "the purposeful availment inquiry is focused on contacts between the defendant and the forum state, not between the defendant and the plaintiff," 771 F.3d at 67, as well as other district court decisions that interpret <u>Walden</u> as a case that applies the minimum contacts and <u>Calder</u> effects tests,[4]

---

[4]    See <u>Exobox Tech. Corp. v. Tsambis</u>, No. 14-cv-501, 2015 WL 82886, at *5 (D. Nev. Jan. 6, 2015) (holding that <u>Walden</u> was "decided . . . narrowly on the facts" and did not change existing juridictional law); <u>Bittorrent, Inc. v. Bittorrent Mktg. GMB</u>, No. 12-cv-2525, 2014 WL 5773197, at *5 (N.D. Cal. Nov. 5, 2014) ("After careful consideration . . ., the Court agrees that <u>Walden</u> does not significantly limit the jurisdictional analysis [in existing case law]."); <u>MRL Dev. I, LLC v. Whitecap Inv. Corp.</u>, No. 13-cv-48, 2014 WL 5441552, at *3-*4 (D.V.I. Oct. 26, 2014) (The defendant "relies on <u>Walden</u> for the extremely broad proposition that a defendant must deal directly with the forum state in order for personal jurisdiction to be proper.  This reliance is misplaced.  This broad proposition cannot be found in

the court declines defendant's invitation to read into <u>Walden</u> more than is apparent from the face of the decision.

Thus, based on defendants' purposeful contacts with New Hampshire, including its alleged trade dress infringement, the over 1,000 advertising flyers sent to New Hampshire retailers, and the indication on defendants' website that its allegedly infringing rifles are available from at least one New Hampshire retailer, and its sales of infringing products in New Hampshire, in addition to the economic injury targeted at New Hampshire in the form of diverted sales, reduced income, and injury to Ruger's marks, plaintiff has satisfied the purposeful availment prong with respect to all counts.

### 3.  <u>Reasonableness</u>

Because plaintiff has met both the relatedness and the purposeful availment standards, the court will now examine whether it is fair and reasonable to hale defendants into court in New Hampshire, applying the familiar "gestalt" factors:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial

---

the text of <u>Walden</u>, or any other case addressing personal jurisdiction by the Supreme Court.")

system's interest in obtaining the most effective
resolution of the controversy, and (5) the common
interests of all sovereigns in promoting substantive
social policies.

C.W. Downer & Co., 771 F.3d at 69 (citations omitted).  "These

factors typically 'play a larger role in cases . . . where the

minimum contacts question is very close.'"  Id. (quoting Adelson

v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007)).


     Defendants argue that the first factor, the defendant's

burden of appearing, would be significant, especially for the

Philippines defendant, for whom defendants argue the burden is

"extraordinary, if not insurmountable," and weighs against the

court exercising personal jurisdiction.  While this factor weighs

in favor of defendants, our circuit has recognized that "mounting

an out-of-state defense most always means added trouble and

cost," but "modern travel creates no especially ponderous burden

for business travelers."  C.W. Downer & Co., 771 F.3d at 70

(internal quotation marks and citations omitted).  "For this type

of burden to affect the analysis, the defendant must show that it

is 'special or unusual.'"  Id.  Like the Canadian defendant who

was unable to demonstrate a "special or unusual" burden in C.W.

Downer & Co., defendants, even the Philippines defendant, have

not done so in this case.

25

Here, the CEO of all three defendants, Tuason, concedes that
he resides in Las Vegas, Nevada, and works in Pahrump, Nevada,
essentially "work[ing] from home with a Philippine time
schedule," while maintaining that "[t]echnically" his main office
is in the Philippines.  Thus, while "technically" CPA is a
Philippines defendant, it has demonstrated no greater burden than
the domestic defendants would bear in defending this action in
New Hampshire.  Traveling from Nevada to New Hampshire is not
particularly inconvenient given modern air travel, and
communication is easy and effective.  The burden of travel here
is hardly "special or unusual," and courts in this circuit have
commonly expected defendants to travel from out-of-state to
defend against an action in which they had minimum contacts with
the forum related to the suit and had purposefully availed
themselves of the opportunity of doing business in the forum
state.  See C.W. Downer & Co., 771 F.3d at 70 (finding no
substantial burden in traveling between Saskatchewan, Canada, and
Massachusetts); Pritzker v. Yarl, 42 F.3d 53, 64 (1st Cir. 1994)
(finding no burden solely in the travel between Puerto Rico and
New York); Bose Corp., 2010 WL 3814886, at *6 (finding no special
or unusual burden in the travel between Iowa and Massachusetts).

In Medicus Radiology, LLC v. Nortek Med. Staffing, Inc., the
court concluded that requiring a defendant to travel from Texas

26

to New Hampshire "is onerous," when the defendant had no presence
in the forum state.  2011 WL 9373 at *5.  However, the court
there gave these factors considerable weight because of what it
saw as a "meager showing" on the relatedness and purposeful
availment prongs, with the only contact between defendant and the
forum state being the plaintiff's injury.  See id. at *6.

Due to plaintiff's adequate, though not overwhelming,
showing of relatedness and purposeful availment, the burden
imposed on defendants by requiring them to appear in New
Hampshire is no more than ordinary.  To the extent that burden
increases as the case moves forward, as recognized in C.W. Downer
& Co., the reality of modern legal practice is that "[m]ost
logistical challenges can be resolved through the use of
affidavits and video devices."  771 F.3d at 70.  Thus, while this
factor favors defendants, it does not tip the scale against the
exercise of jurisdiction.

The second factor, "the interest of [the forum state] in
hearing this suit weighs in favor of the [p]laintiff."  Bose
Corp., 2010 WL 3814886, at *6 (quoting Northern Light Tech. v.
Northern Lights Club, 97 F. Supp. 2d 96, 107 (D. Mass. 2000)
(providing that in a trademark case, "the alleged trademark
infringement would likely have significant effects [in the forum

state])).  In <u>Bose Corp.</u>, the court concluded that "Massachusetts
has an interest in preventing trademark infringement against
those subject to the protections and requirements of its laws."
<u>Bose Corp.</u>, 2010 WL 3814886, at *6 (quoting <u>Hasbro, Inc. v. Clue
Computing, Inc.</u>, 994 F. Supp. 34, 45 (D. Mass. 1997)).
Similarly, in <u>C.W. Downer & Co.</u>, the court recognized that
"Massachusetts has significant interests in providing a
convenient forum for disputes involving its citizens and in
ensuring that its companies have easy access to a forum when
their commercial contracts are said to be breached by out-of-
state defendants."  771 F.3d at 70.  So, too, does New Hampshire
when out-of-state defendants are said to have inflicted tortious
injury on its citizens.

The third factor, plaintiff's convenience weighs in favor of
plaintiff for obvious reasons.  As in <u>Bose Corp.</u>, where the
plaintiff was based in Massachusetts, a significant amount of the
evidence here would originate in New Hampshire, and Ruger's
counsel and relevant executives resided in New Hampshire or
nearby.  2010 WL 3814886, at *7.  And, as in <u>Bose Corp.</u>, "this
court will accord deference to the plaintiff's choice of . . .
forum."  <u>Id.</u> (internal quotation marks, citations, and
alterations omitted).

The fourth factor, the administration of justice, seems to be in equipoise. While Ruger's manufacturing facility is in New Hampshire, and the relevant design and manufacturing witnesses are here, defendants' CEO is in Nevada, and their relevant witnesses, documents, and electronic storage devices are likely in Nevada or in the Philippines (defendants provide very little data or argument on this factor).

Finally, aside from the social policy promoted by courts in exercising jurisdiction over defendants who allegedly infringe on intellectual property interests of its forum residents, already addressed by the second factor, the parties point to no overarching social policy counseling in favor of, or against, exercising personal jurisdiction in this case.

Thus, like in Bose Corp., "[i]n sum and balance, the exercise of personal jurisdiction over defendant[s] is reasonable and fundamentally fair. There is no indication that doing so would offend traditional notions of fair play and substantial justice." 2010 WL 3814886, at *7 (citing Burger King Corp. v. Rudzewicz, 481 U.S. 462, 477-78 (1985)). As the court concluded after a similar balancing analysis in C.W. Downer & Co., "To the limited extent that the gestalt factors are meaningful, they weigh in favor of jurisdiction even considering the international

context." 771 F.3d at 71. For these reasons, the court concludes that exercising jurisdiction over defendants in this case is fair and reasonable.

## II.  Motion to Transfer Venue

In the alternative, defendants urge the court to dismiss this case or transfer it to federal court in Nevada pursuant to 28 U.S.C. § 1406(a), because venue is improper in this district, or if the court determines venue is proper, to nonetheless transfer it pursuant to § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

### A.  <u>Transfer for Improper Venue</u>

Defendants contend that venue is improper in New Hampshire, so the court should either dismiss the case or transfer it to the District of Nevada pursuant to 28 U.S.C. § 1406(a). United States Code § 1391 governs proper venue analysis. In relevant part it provides, "A civil action may be brought in . . . a judicial district in which any defendant resides . . . ." 28 U.S.C. § 1391(b)(1). It further provides that for "all venue purposes[,] . . . an entity with the capacity to sue and be sued . . . shall be deemed to reside, if a defendant, in any judicial

district in which such defendant is subject to the court's
personal jurisdiction with respect to the civil action in
question . . . .  [A] defendant not resident in the United States
may be sued in any judicial district, and the joinder of such a
defendant shall be disregarded in determining where the action
may be brought with respect to the other defendants."
§ 1391(c)(2), (3).


   While plaintiff has the burden of demonstrating that venue
is proper when challenged by a defendant, see Johnson v. Gen.
Dynamics Info. Tech., Inc., 675 F. Supp. 2d 236, 239 (D.N.H.
2009), in this case, plaintiff carried that burden by making a
prima facie showing that the defendants are subject to personal
jurisdiction in this district.  See also Astro-Med, Inc. v. Nihon
Kohden America, Inc., 591 F.3d at 11, n.6.  Thus, the court
concludes that venue is proper in the District of New Hampshire.


   B.   Transfer for the Convenience of the Parties
   Defendants alternatively move the court pursuant to 28
U.S.C. § 1404(a) to transfer venue to the District of Nevada "for
the convenience of the parties and witnesses," and "in the
interest of justice."  See 28 U.S.C. § 1404(a).  Our circuit has
recognized that "[s]ection 1404(a) is intended to place
discretion in the district court to adjudicate motions for

transfer according to an 'individualized, case-by-case
consideration of convenience and fairness.'" <u>Astro-Med, Inc.</u>,
591 F.3d at 12.  When a district court considers a discretionary
motion to transfer venue, "[n]ot only does the burden of proof
rest with the party seeking to transfer; there is a 'strong
presumption in favor of the plaintiff's choice of forum.'" <u>Id.</u>
at 13 (quoting <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st
Cir. 2000); <u>see also</u> <u>Society of Lloyd's v. Carter</u>, No. 02-cv-452,
55 Fed. R. Serv. 3d 265, at *2 (D.N.H. Mar. 14, 2003).  "Finally,
whether to transfer an action for convenience is a matter totally
within the discretion of the trial court." <u>Society of Lloyd's</u>,
No. 02-cv-452, 55 Fed. R. Serv. 3d 265, at *2.

     Here, there is no doubt that Ruger could have brought this
action in the District of Nevada, based on defendants' claims
that they are Nevada residents, with the exception of the
Philippines defendant.  However, like the court in <u>Society of
Lloyd's</u>, "[this] court is hard pressed to see how [defendants]
have met their burden of proving that transfer is warranted."
<u>Id.</u>

     A consideration of the factors relevant to determining
whether defendants have met their substantial burden persuades
this court that transfer should not be granted.  The factors to

be considered in determining whether to transfer a case for the
convenience of the parties are: "the convenience of the parties
and witnesses, . . . the availability of documents; the
possibility of consolidation; and the order in which the district
court obtained jurisdiction."  Coady, 223 F.3d at 11.


        Section 1404(a) and the circuit direct the court to first
consider the convenience of the parties.  That factor is, at
best, a wash.  As defendants contend, it will no doubt be
comparatively inconvenient for them and their witnesses to
litigate this case in New Hampshire rather than Nevada.  It would
be no less burdensome, however, for plaintiff to litigate in
Nevada, because it would have to bear the financial burden of
transporting itself and its witnesses, including non-party
witnesses such as the licensed New Hampshire retailers who
received advertising flyers from defendants or their agent or who
are actively selling defendants' allegedly infringing rifles, as
well as New Hampshire consumers, who have been confused by
defendants' rifle offerings.  Further, all of the design and
manufacturing evidence is here at Ruger's manufacturing plant.
"Since there is a presumption in favor of plaintiff's choice,
transfer is not appropriate where its effect is merely to shift
the inconvenience from one party to the other."  Anderson v.
Century Prods. Co., 943 F. Supp. 137, 148 (D.N.H. 1996).

Defendants attempt to persuade the court that plaintiff should
bear the burden because it is a "billion dollar publically traded
corporation."  Defendants bear the burden of proof, and
defendants comprise a successful international conglomeration in
their own right.  The scales are roughly balanced on that score,
or, if tilted, they tilt in favor of plaintiff.

The factors concerning consolidation and the first-filed
rule are not relevant in this case, thus, with the applicable
factors either weighing even or slightly favoring plaintiff, and
considering the weight to be afforded plaintiff's choice of
forum, defendants have failed to carry their burden to establish
such substantial relative inconvenience, and the court denies the
motion to transfer.

**III.  Motion to Dismiss New Hampshire CPA Claim**

Lastly, defendants have moved to dismiss Count III of
plaintiff's complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.
12(b)(6), for failure to state a claim upon which relief can be
granted.  A Rule 12(b)(6) motion will be granted only if,
accepting all of the plaintiff's factual averments contained in
the complaint as true, and drawing every reasonable inference
helpful to the plaintiff's cause, plaintiff has failed to "set
forth a plausible claim upon which relief may be granted."  <u>Foley</u>

v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations and internal quotation marks omitted).  A claim is "facially plausible" when "the factual allegations are sufficient to support the reasonable inference that the defendant is liable."  Cardigan Mountain School v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (citations and internal quotation marks omitted).  By this standard, at this stage, the court's inquiry is a limited one, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Defendants ask the court to dismiss Count III brought under New Hampshire's Consumer Protection Act, RSA 358-A (1993), on the ground that defendants' alleged conduct is not covered by the CPA.  However, under New Hampshire law, the CPA is "to be broadly applied."  Gilmore v. Bradgate Assoc., Inc., 135 N.H. 234, 238 (1992), overruled on other grounds.  This court has previously held that the CPA covered the conduct of a seller of products who wrongfully appropriated another's idea in designing those products.  Curtis Mfg. Grp. v. Plasti-Clip Corp., 888 F. Supp. 1212, 1227-28 (D.N.H. 1994).  The facts of Curtis are sufficiently analogous to the facts here that this case is controlled by Curtis's holding.  Consequently, the court will not

35

dismiss Ruger's CPA claim under Federal Rule of Civil Procedure 12(b), at least not at this early stage.

## Conclusion

Because plaintiff has met its modest burden at this stage of demonstrating that the court may exercise specific personal jurisdiction over defendants, defendants' motion to dismiss or, in the alternative, to transfer venue (document no. 13) is denied without prejudice.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

July 28, 2015

cc:  James F. Laboe, Esq.
     R. Matthew Cairns, Esq.

36